Jno. A. Wood *v.* B. L. and W. H. McFerrin, *et als.*

---

JNO. A. WOOD *v.* B. L. and W. H. McFERRIN, *et als.*

STAYOR. *Release of. Extension of time.* The acceptance by a judgment creditor of the benefits of a deed of trust made by the judgment debtor, does not release the stayor upon the judgment, though the time given the trustee to wind up the trust extends beyond the stay.
Cases cited: Am. Lead. Cases, 5 Ed., p. 444. United States *v.* Hodge, 6 How,, 79; Lea *v.* Dozier, 10 Hum., 451.

ASSIGNMENT OF JUDGMENT. *Stayor must pay full amount.* Though the judgment creditor assign his judgment at a large discount, yet the stayor must pay the assignee the full amount. Not in conflict with Petty *v.* Hannum, 2 Hum., 102.

EXCEPTIONS TO ANSWER. *Clerk and Master to act upon.* Exceptions to an answer must first be brought before the Clerk and Master for his action, then by appeal to the Chancellor.
Code, Section 4402, *et seq.*, Ch. Rules 1, Section 5.

INJUNCTION BOND. *Securities. Sale.* Where the injunction, in part, is to enjoin the sale of a lot levied upon by execution, the securities upon the bond, though liable for the entire debt enjoined, are entitled to have a decree for a sale of the lot first, and to be made responsible for the balance only.

---

### FROM CANNON.

---

Appeal from the Chancery Court. B. M. TILLMAN, Judge.

J. W. BURTON, J. S. BARTON and J. L. FARE for Wood.

BRIEN, CANTRELL & GRIBBREL for McFerrin *et als.*

NICHOLSON, C. J., delivered the opinion of the Court.

This bill is filed by the complainant as stayor of two judgments, one in favor of Martin Pedle, Hambrock & Co., against the firm of Carmichael & St. John, recovered about the 14th of November, 1860, for $497 79; the other by Payne & Cohart, of date 29th of September, 1860, for $280. These judgments were recovered before a Justice of the Peace for Cannon county, and stayed by complainant. It is charged in the bill, as one of the leading grounds for the relief sought, that in November, 1860, Carmichael & St. John executed a deed of trust, by which they conveyed a large amount of assets, consisting of their stock of merchandise, of the value of between $6,000 and $7,000, together with a large amount of debts, to one Ed. J. Wood, in trust, to sue and collect, and to appropriate proceeds of the trust property and assets to the payment of the large list of debts specified, in the order of preference required in said deed, among which debts are included the two judgments above referred to, they being part of what is known in the deed as preferred debts. It is claimed in the bill, that as this trust was not to be closed, by its terms, until January, 1862, that it amounts to such a contract for delay, after acceptance by the beneficiaries, as should discharge the complainant as stayor, and that he is, in fact, so discharged. The deed of trust is made part of the bill, as an exhibit. On looking to the terms of this deed of trust, it appears that certain notes and judgments, among them the judgment in this case, were to be paid first, and that the trustee was to sell the goods and collect the assets, and first appropriate the money

to pay their preferred debts, after reserving expenses of executing the trust, and if all the indebtedness, both preferred and second class claims, were not paid by the 1st of January, 1862, then the balance of the goods · on hand were to be sold by the trustee, as he thought most advantageous to all the parties concerned, and pay the indebtedness remaining.

It is clear, there is no express contract for delay in the deed, on the contrary, the inference is very fair from the face of the deed, and the fact that the debts of the firm assigned amounted to about $13,000, which are to be collected by the trustee; that it was supposed and contemplated that the preferred debts, at any rate, would be discharged in a less time than the period referred to for finally closing the trust; in fact, that they would be discharged as fast as the debts could be realized.

There being no contract for delay, but only such a security as we have stated above, the question is, whether taking this security, under the circumstances, released the stayor. We think it did not. The rule is thus laid down in Am. Lead. cases, 5 Ed., 1871, p. 444: Taking a mortgage or bill of sale, conditioned for payment at a future day, is not a suspension of the debt, unless it is expressly so agreed. *Prima facie,* such an instrument is an additional or collateral security, and leaves the existing remedies of the creditor against both principal and surety intact. See *United States* v. *Hodge,* 6 How., 79. In the case of *Lea* v. *Dozier,* 10 Hum., 451, this principle is substantially adopted by our own Court, it being held, in that case, that

while there was no contract, in express terms, to delay for the six months the deed of trust had to run, yet such a contract was necessarily implied from the language of the instrument, and the Court finding such a contract a binding agreement for delay, held the surety released. Finding no such contract expressed in terms, nor necessarily implied in the language of the deed of trust in this case, we hold that there can be no release of the surety by reason of the making of the deed of trust by the principals, nor its acceptance by the beneficiaries, even if such acceptance should be clearly made out. 'This deed neither suspends the remedy of the creditor to enforce his debt, nor works any injury, in fact, to the surety, and on one of these grounds we believe all the cases on this subject agree. On the contrary, the taking the collateral security of the trust deed was an advantage to the security, as it, if properly administered, tended to his relief by the specific appropriation of a fund to its payment, and that in preference to other creditors, and in addition, the stayor might, at the end of the stay, have paid the debt, had judgment by motion against the principals, and been entitled for his indemnity, to be substituted to the rights of the creditors under the trust deed. The complainant must fail of relief on this ground.

It appears that one or both of these judgments had been assigned to the Messrs. McFerrin, for the sum of $300, a large discount. It is now insisted, that a recovery can only be had for the amount actually paid, under the authority in the case of *Petty* v. *Hannum*, 2 Hum., 102. That was a case where the consideration

of the note had failed, but it had been negotiated at a discount of $33\frac{1}{3}$ per cent., perhaps. The Court held, that under this state of facts, the note was only negotiated in due course of trade for the amount actually paid for it, with interest. The principle, thus announced, has no application to the case before us. There is no pretence of a failure of consideration, nor does the question arise. As to the questions raised in argument on exceptions filed to the answers of the two Northern firms, we need but say, that as to the first series of exceptions, because of the answer not being sworn to by the parties themselves, but by the attorney, we do not see that any action was ever taken, either by the Clerk and Master or the Chancellor. It appears that another answer was filed by one of these firms after this, to which exceptions appear in the record, which exceptions were stricken from the file by the Chancellor, because not filed within the twenty days allowed for excepting to an answer. We need not undertake to say how the facts were as to this matter, as it appears, from the face of the exceptions, that they were filed in open Court, and not before the Master, and no action of the Master was involved in them. They could only be filed for the action of the Master, and be properly before the Chancellor on appeal from the Master's decision. See Code, Section 4402, and subsequent sections, and Ch. Rules. The complainant having failed to have his exceptions brought to the attention of the Master, or his decision on them, and

having proceeded with the proof, and gone to trial on the issues presented in these answers, can not now assign these matters for error in this Court. We can only reverse for errors affecting the merits of the case. Code, Section 4516. The only other question we deem it proper to notice is as to the extent of the liability of the sureties on the injunction bond. The condition of this bond is: "Now if the said Jno. A. Wood shall prosecute said injunction with effect, or in case he fails, to pay all costs and damages as shall be awarded and recovered, etc., and shall, moreover, abide by and perform such orders and decrees as the Court may make in this case, and pay such damages as the Court may order, then to be void," etc. The Chancellor dissolved the injunction, on answer, as to the debt for $497.97, and ordered a judgment and execution against Wood and his sureties on the injunction bond for this debt upon the execution of a bond, to refund in case of a decree for complainant. In this he probably erred, as the injunction, in part, was against selling a lot that had been levied on as property of Wood, and the sureties probably were entitled to have this lot sold on dissolution of the injunction, in part or whole discharge of their liability. But as we hear the case *de novo* in this Court, the proper decree can be rendered here. We think the fair construction of the bond makes the sureties liable for the debts enjoined, but the lot levied on can be sold first for their exoneration, if still held by the complainant, and they be decreed liable for the

Jno. A. Wood *v.* B. L. and W. H. McFerrin *et als.*

balance of the debts remaining.    With this modifica
tion the decree of the Chancellor will be affirmed,
with costs.